(No. 6105. November 10, 1934.)

STATE, Respondent, v. K. B. STRATFORD, Appellant.

[37 Pac. (2d) 681.]

Frank F. Kibler, for Appellant.

Bert H. Miller, Attorney General, and M. A. Thometz, Assistant Attorney General, for Respondent.

GIVENS, J. — Appellant was convicted of obtaining money by false pretenses under the following information:

"The said K. B. Stratford on or about the 15th day of December, A. D. Nineteen Hundred and Thirty two at the County of Canyon, in the State of Idaho, then and there being and prior to the filing of this Information did then and there wilfully, unlawfully, knowingly, feloniously and designedly make false and fraudulent representations to P. M. Bloom of Nampa, Canyon County, Idaho, by then and there representing to the said P. M. Bloom that the Idaho Wood Products, Inc., had sold and delivered to the Farmers Co-op. Creamery Company of Payette, Idaho, 350 tom turkey boxes and 350 hen turkey boxes, which said representations were then and there in truth and fact false and fraudulent and which said representations the said K. B. Stratford then and there well knew to be false and untrue, and he the said K. B. Stratford then and there being, did

then and there make and assign as Secretary of the Idaho Wood Products, Inc., for value received an invoice for the said turkey boxes, which he the said K. B. Stratford falsely and fraudulently represented had been sold to the Farmers Co-op Creamery Company of Payette, Idaho, he the said K. B. Stratford then and there well knowing such representations to be false and fraudulent and he the said K. B. Stratford, then and there by said false and fraudulent representations induced the said P. M. Bloom to pay to the Idaho Wood Products, Inc., the sum of $238.03, lawful money of the United States of America, for said false and fraudulent invoice. . . . . ''

By demurrer, and in his motion in arrest of judgment and motion for new trial, appellant challenges the sufficiency of the information in that by using the word ''induced,'' it did not sufficiently charge that the money was in fact paid over. The word ''induce'' has, among others, this definition according to Webster's Dictionary:

''To bring on or about; to effect; cause; as, a fever *induced* by fatigue or exposure.'' . . . .

''Induced—Brought on as by inducement; caused by indirect influence.''

The New Standard Dictionary (Funk & Wagnalls) defines ''induce'':

''To influence to an act or course of conduct; lead by persuasion or reasoning; incite by motives; prevail on; as, to *induce* a man to stop drinking.'' . . . .

''To bring on; lead to or produce; cause; as, a sickness *induced* by fatigue.''

Thus, while the word ''induce'' has to do with the sustaining reasons for a course of action, it is apparent that, as used herein, the phrase, '' . . . . induced the said P. M. Bloom to pay to the Idaho Wood Products, Inc. . . . . ,'' connotated and clearly conveyed to one of ordinary understanding that payment was in fact made, and therefore the information was in this particular sufficient. (Sections 19–1309, 19–1311, 19–1318, 19–1319, I. C. A.; *Faulk v.*

*State,* 38 Tex. Cr. App. 77, 41 S. W. 616; *State v. Brown,* 143 Wis. 405, 127 N. W. 956.)

"It is claimed that appellant's objection to the introduction of evidence in support of the first and third counts should have been sustained. The objection was based on the ground that these counts failed to state facts sufficient to constitute a public offense. The part of the first count of the information which is under criticism in this regard reads as follows: 'That the said John R. Crowley . . . . was induced . . . . to pay over and deliver to the said B. D. Whiteside $3,000 in money.'

"There is no direct allegation in this count that John R. Crowley actually paid over and delivered $3,000 or anything else to B. D. Whiteside, or that Whiteside obtained anything from Crowley. It is obvious that, regardless of the false pretenses which the defendant may have made which were persuasive enough to have amounted to an inducement to Crowley to pay over and deliver money, no crime was committed unless Crowley in fact paid the money over and delivered it to the defendant.

"In each of the cases cited by the people to sustain the pleading in question there is a positive allegation that property was obtained by the defendant. In *People v. Griesheimer,* 176 Cal. 48, 167 Pac. 521, 522, the language used was 'did then and there deliver.' In *People v. Flowers,* 54 Cal. App. 214, 201 Pac. 468, it was, that was 'paid to appellant the sum of $130.' In *People v. Haas,* 28 Cal. App. 182, 151 Pac. 672, it was 'did sell and dispose of.' A good pleader would not fail to make a direct allegation in charging an offense of this nature that property was in fact obtained by the defendant. However, in *State v. Brown,* 143 Wis. 405, 127 N. W. 956, an indictment containing similar language was held sufficient against an attack upon the same ground as in the case at bar. In that case the language was 'did . . . . induce said Marinette county to pay.' It was there held that these words would, in their ordinary acceptation, be held to mean that the defendant obtained the money. The same may be said of the words

used in the instant case. They convey the meaning that Whiteside received the money charged to have been obtained by false pretenses. The evidence shows clearly that he did receive it, and that his case was not prejudiced by the lack of directness in the pleading. Therefore we conclude that as to this ground the judgment must be sustained." (*People v. Whiteside*, 58 Cal. App. 33, 208 Pac. 132.)

The next group of assignments considered are to the effect that there was a fatal variance between the information and proof and that the proof did not comply with the statute in that money was paid not to appellant but to the Idaho Wood Products, Inc.

The evidence shows that appellant was secretary and a stockholder in and received a salary from the organization: thus even if payment to another is not sufficient to sustain a conviction for obtaining money under false pretenses, which point we do not decide, there was sufficient benefit flowing to appellant, on account of the receipt of the money by the company to justify and sustain the allegation in the information, and the conviction. (25 C. J. 606; 12 Cal. Jur. 457; *People v. Woods*, 59 Cal. App. 740, 212 Pac. 41; *In re Aldridge*, 168 Fed. 93; *State v. Mendenhall*, 24 Wash. 12, 63 Pac. 1109; *State v. Hooker*, 99 Wash. 661, 170 Pac. 374; *State v. Balliet*, 63 Kan. 707, 66 Pac. 1005; *State v. Davis*, 56 Kan. 54, 42 Pac. 348; *State v. Chingren*, 105 Iowa, 169, 74 N. W. 946; 19 Cyc. 409; Cyclopedia of Criminal Law, Brill (1922), sec. 1261.)

The authorities cited by appellant in support of his contention in this regard merely hold that the party defrauded must have parted with title to the money or property given or paid. (25 C. J. 604, sec. 33; *People v. Rae*, 66 Cal. 423, 6 Pac. 1, 56 Am. Rep. 102; *People v. Rial*, 23 Cal. App. 713, 139 Pac. 661; *People v. Schenone*, 19 Cal. App. 280, 125 Pac. 758; *Shemwell v. People*, 62 Colo. 146, 161 Pac. 157; *State v. Dickinson*, 21 Mont. 595, 55 Pac. 539; *State v. Germain*, 54 Or. 395, 103 Pac. 521; *People v. Bryant*, 119 Cal. 595, 51 Pac. 960; *People v. Moore*, 82 Cal. App. 739, 256 Pac. 266; *People v. Delbos*, 146 Cal. 734, 81 Pac. 131.)

The money was paid by check charged to the account of P. M. Bloom, and credited to the Idaho Wood Products, Inc.; title to the money therefore passed as far as the record is concerned, without question, fully satisfying even the authorities cited by appellant.

The point that proof of payment by check does not sustain the charge that defendant induced the complaining witness to pay money has been decided adversely to appellant. (*State v. Sheehan*, 33 Ida. 553, 196 Pac. 532; *State v. Stevens*, 48 Ida. 335, 282 Pac. 93.)

Appellant tries, however, to distinguish the Sheehan case, on the theory that someone other than defendant got possession of the checks and their proceeds as indicated above, relying upon *People v. Cronkrite*, 266 Ill. 438, 107 N. E. 703, and *Bates v. State*, 124 Wis. 612, 103 N. W. 251, 4 Ann. Cas. 365. *People v. Cronkrite, supra*, was cited to the court in the Sheehan case and the doctrine thereof rejected; and such attempted distinction is immaterial since the money was unquestionably paid to the company.

Appellant urges that evidence of two other invoices, testified to have been fictitious, as was the one upon which the immediate charge is based, on the theory that they were similar offenses, and to show criminally fraudulent intent and lack of mistake, being subsequent to the offense charged, was not admissible, relying largely upon *Coblentz v. State*, 84 Ohio St. 235, 95 N. E. 768. The reason assigned for the holding in the case there was:

"As to those transactions which occur subsequent to the one in question, the weight of authority and reason is against the admissibility of the testimony. Any other rule would widen the scope of the inquiry beyond bounds within which defendant could fully prepare his defense."

Evidence with regard to prior as well as subsequent transactions could widen the scope, and an examination discloses that the weight of authority is in favor of admissibility and not against. (*Boultinghouse v. State*, 24 Okl. App. 369, 218 Pac. 173; *State v. Clamp*, 164 Wash. 653, 3 Pac. (2d) 1096, 80 A. L. R. 1302, and note; *State v. O'Donnell*, 36 Or.

222, 61 Pac. 892; *State v. Robinson*, 120 Or. 508, 252 Pac. 951; 3 Greenleaf on Evidence, 16th ed., sec. 15; 16 C. J. 597, sec. 1162; Wharton on Criminal Evidence, 10th ed., vol. 1, sec. 39; 19 Cyc. 443; Elliott on Evidence, vol. 4, sec. 2976; 8 R. C. L. 205, sec. 199; *State v. Marshall*, 77 Vt. 262, 59 Atl. 916.)

 ''The general rule is well established and is recognized in this jurisdiction that upon trial for felony the prosecution will not be permitted to give evidence tending to establish the guilt of defendant of another distinct and independent crime. But this rule has its exceptions; and it is not contended and cannot be contended that this court has not recognized that exceptions to this rule must obtain; and where this offense is involved, with the question of intent of vital importance, this court has held that evidence of similar transactions before the one charged are admissible to prove intent. *People v. Henssler*, 48 Mich. 49, 11 N. W. 804; *People v. Wakely*, 62 Mich. 297, 28 N. W. 871; *People v. Summers*, 115 Mich. 537, 73 N. W. 818. Does this exception also permit the introduction of evidence of subsequent similar acts, occurring shortly after the one charged and a part of the same system or scheme for the like purpose of proving intent? We think that upon reason and authority this question must be answered in the affirmative. The underlying reason for the exception lies in the fact that a man may be honestly mistaken, have no fraudulent intent if the transaction stands alone, is single, but that the probabilities of an honest mistake diminish as the number of similar transactions indicating a scheme or system increase. Thus a man may honestly offer a counterfeit bill, and the one transaction, standing alone, has little force in proving guilty knowledge, in proving intent to defraud. But, if he successively offers 5 or 25 counterfeit bills, as such offers increase in number the probabilities of an honest mistake diminish, and the probabilities of guilty knowledge, of intent to cheat, increase. As was said by Lord Coleridge in *Reg. v. Francis*, 12 Cox's Criminal Cases, 612:

" 'It seems clear upon principle that, when the fact of the prisoner having done the thing charged is proved, and the only remaining question is whether, at the time he did it, he had guilty knowledge of the quality of the act, or acted under a mistake, evidence of the class received must be admissible. It tends to show that he had been pursuing a course of similar acts, and thereby it raises a presumption that he was not acting under a mistake. It is not conclusive; for a man may be many times under a similar mistake or may be many times the dupe of another. But it is less likely he should be so oftener than once, and every circumstance which shows that he was not under a mistake on any of these occasions strengthens the presumption that he was not on the last.'

"The reason for the exception being as stated, we perceive no ground of distinction between similar transactions occurring shortly before and those occurring shortly after the offense charged where they are part of a system or scheme to cheat and defraud." (*People v. Rice*, 206 Mich. 644, 173 N. W. 495.)

Appellant further urges that the complaining witness was induced to pay his money not because of the false representations as to the authenticity of the invoice but because of the guarantee of payment by the Idaho Wood Products, Inc.

The court's instruction on this point:

"You are instructed that it is not sufficient to convict that there be merely a false representation, but the complaining witness must have relied upon it; in other words, the false representation must have been the effective cause in inducing the complaining witness to part with his money. Such false representation need not be the sole cause. It may be a cause operating together with other inducing cause or causes. In order for false representations to be an effective cause it is necessary to find that without such false representations the complaining witness would not have parted with his money, in other words, that the complaining

witness would not have parted with his money unless such false representations were made."

correctly stated the law and left it to the jury to say what was the inducing cause, and there was evidence to the effect that the complaining witness would not have paid for a false invoice. (*People v. Moxley,* 17 Cal. App. 466, 120 Pac. 43; *Smith v. State,* 7 Okl. Cr. 136, 122 Pac. 732; *State v. Kulbe,* 67 Wash. 21, 120 Pac. 510; *State v. Elliott,* 68 Wash. 603, 123 Pac. 1089; *People v. Whiteside,* 58 Cal. App. 33, 208 Pac. 132; *People v. Steffner,* 67 Cal. App. 1, 227 Pac. 690; *In re Snyder,* 17 Kan. 542; *State v. Bacha,* 44 Nev. 373, 194 Pac. 1066; 25 C. J. 601, sec. 28.)

▆ Appellant's requested instruction No. 10:

"The Court instructs you that before this crime can be committed there must be active, affirmative, false representations. Therefore, you are instructed that the mere nondisclosure of facts known to the defendant, even though a disclosure thereof would have operated to deter the complaining witness P. M. Bloom from parting with his money, is not a false pretense. In other words, if you find from a consideration of all the evidence that the defendant in face made no false representations in order to induce P. M. Bloom to purchase the invoice in question, but that the defendant did not disclose facts known to him, which if disclosed may have operated to have prevented P. M. Bloom from parting with his money, then this conduct on the part of the defendant does not amount to a false pretense and he should be found not guilty. Mere silence and mere supression of the truth, upon which another may act, is not sufficient to constitute the crime of obtaining money by false pretenses."

was sufficiently covered in instruction No. 7,[1] which correctly followed *State v. Whitney,* 43 Ida. 745, 254 Pac. 525.

Appellant also contends that instructions Nos. 5, 6, 10

[1] "The Court instructs you that to constitute the offense charged in the information, four things must occur, and four distince averments must be proven by the prosecution beyond any reasonable doubt.

and 13 were inconsistent and confusing. Keeping in mind all instructions are to be considered together (*State v. McClurg*, 50 Ida. 762, 300 Pac. 898; *State v. Jurko*, 42 Ida. 319, 245 Pac. 685; *State v. Ramirez*, 33 Ida. 803, 199 Pac. 376; *State v. Bond*, 12 Ida. 424, 86 Pac. 43; *People v. Bernard*, 2 Ida. 193, 10 Pac. 30), appellant's argument is confusing itself because he says:

"Here the jury could with very little difficulty find the defendant guilty under instruction No. 5, *because Bloom was in fact actually defrauded of some money* and they were told that this was all that was necessary, yet other instructions given by the court, especially the instruction No. 10 virtually directed that the defendant be acquitted of the crime charged." (Italics ours.)

██ Instruction No. 5 as given was almost a *verbatim* copy of section 17–3902, I. C. A. Instruction No. 10 as given contained the substance of appellant's requested instructions Nos. 7 and 8, hence he may not complain. (*United States v. Camp*, 2 Ida. 231, 10 Pac. 226; *State v.*

---

There are as follows: (1) There must be an intent to defraud; (2) There must be an actual fraud committed. (3) False pretenses must be used for the purpose of perpetrating the fraud. (4) The fraud must be accomplished by means of the false pretenses made use of for the purpose, and, the false pretenses must be the cause which induced the owner to part with his property. The prosecution must establish and prove these four necessary and distinct averments beyond a reasonable doubt, and to a moral certainty. Certain phases of these essentials will be set forth by the Court in other instructions to follow. Now, if there exists in your mind a reasonable doubt as to whether or not there was an actual fraud committed, or, if there exists in your mind a reasonable doubt as to whether or not the defendant intended to defraud the said P. M. Bloom, or, if there exists in your mind a reasonable doubt as to whether or not false pretenses were used for the purpose of perpetrating the fraud, or, if there exists in your mind a reasonable doubt as to whether the false pretenses were the cause which induced the said P. M. Bloom to part with his money, *the* where such reasonable doubt may exist as to either, any, or all of these essentials, you must give the defendant the benefit of that doubt and acquit him."

*George,* 44 Ida. 173, 258 Pac. 551, *certiorari* denied, 275 U. S. 544, 48 Sup. Ct. 83, 72 L. ed. 417; *State v. Farris,* 48 Ida. 439, 282 Pac. 489; *State v. Brace,* 49 Ida. 580, 290 Pac. 722.) Instruction No. 5 had to do with the general statement of the offense, and instruction No. 8 with what was the inducing cause for the party defrauded to pay his money.

The evidence as to defendant's knowledge that the invoices were fictitious, though circumstantial and inferential, is sufficient, and there is clear, explicit and direct proof that the invoices were fictitious and that the complaining witness was defrauded thereby.

The judgment is therefore affirmed.

Budge, C. J., and Morgan, Holden and Wernette, JJ., concur.